491 S.E.2d 260

**Susan B. GREEN, Respondent,**

v.

**Jack L. GREEN, Jr., Appellant.**

**No. 2701.**

Court of Appeals of South Carolina.

Heard May 7, 1997.
Decided July 21, 1997.

Evander G. Jeffords, of The Hyman Law Firm, and Mary Layton Wells, of the Law Office of Mary Layton Wells, Florence, for the appellant.

John O. McDougall, of McDougall & Self, Sumter, for the respondent.

PER CURIAM:

In this domestic action, Jack L. Green, Jr. (the husband), appeals the family court's modification of an order approving the property settlement agreement he reached with Susan B. Green (the wife). We reverse.

## FACTS

The wife brought this action for divorce against the husband on the ground of adultery. At a hearing held on November 8, 1995, the family court approved a property settlement agreement between the parties, issued an order to that effect, and sealed the record. In its order, the family court found the agreement to be "fair, just and equitable, and within the bounds of reasonableness from both a procedural and substantive standpoint." The order further provided that pursuant to the agreement and request of the parties, the court would not enter a decree of divorce until after January 1, 1996.

Pursuant to the agreement, the wife received an office building located at 4605 East Oleander Drive in Myrtle Beach, South Carolina. She and the husband agreed that the value of the building was $400,000. In arriving at this value, the parties first consulted a 1994 appraisal which valued the property at $420,000. However, the parties agreed that the property was probably worth less than the appraised value, and they therefore stipulated to a value of $400,000.

On February 20, 1996, the wife filed a motion to set aside the stipulation as to the value of the building and for sanctions. The wife alleged that the husband and his expert "fraudulently concealed and withheld evidence of the true condition of the building and the fact that there was structural

as well as other damage to the building which would have a cost of approximately $36,500 to repair." [1]

At the hearing on her motion, the wife admitted that although she drove past the building, she did not inspect the building prior to accepting it as part of her property settlement. She admits she was not prevented from doing so and had not entered the building since before 1989. The building had a history of repairs, and at the hearing on this matter there was conflicting testimony between the husband and the wife concerning oversight of the property. The husband testified that in 1989 parts of the floor in the building buckled. However, he maintained that the wife dealt with the building, paid the bills on it, and coordinated the necessary repairs. The wife, however, claims she only paid for the 1989 repairs and did not negotiate for them. Moreover, the wife claims she was unaware that the building had sustained structural damage until after she entered into the property settlement agreement with the husband. The wife conceded that neither she nor the husband really knew the extent of the damage to the building at the time they entered into the agreement.

On June 5, 1996, the family court entered a supplemental decree of divorce. The decree incorporated the November 8, 1995 order and required the parties to strictly comply with its terms. The supplemental divorce decree did not address the wife's challenge to the November 8 order.

On June 10, 1996, the family court entered what it captioned a "final order." In the order, the family court found that although the husband had "some knowledge" of the damage to the property, the wife failed to prove the husband had "actual knowledge of the structural damage to the building, that he 'negotiated' with her in the settlement of the case with this knowledge, or that he 'defrauded' her" by allowing her to agree to take possession and ownership of the building without revealing the structural damage. The judge declared the wife "somewhat remiss" for not having the building inspected, but opined that even if she had been more diligent in inspecting the premises, she, like the husband, may not have realized the extent of the damage. The trial judge then found that it was

---

1. At the hearing, the wife amended her pleadings to show that the actual cost to repair the building was $46,233.13.

"within the equity powers of the court to make an adjustment on the value of the building received by [the wife]." Based on this conclusion, the court ordered the husband to pay the wife $23,116.56 for repairs to the building. The family court refused to find that the husband knew there was extensive damage to the building or that the damage was structural.

Subsequently, the husband filed a motion to set aside, alter or amend the judgment or for relief from the judgment. The family court denied the motion. This appeal followed.

## SCOPE OF REVIEW

In appeals from the family court, this court has jurisdiction to find facts in accordance with its own view of the preponderance of the evidence. *Epperly v. Epperly,* 312 S.C. 411, 440 S.E.2d 884 (1994). The broad scope of this review, however, does not require this court to disregard the findings of the trial judge. *Stevenson v. Stevenson,* 276 S.C. 475, 279 S.E.2d 616 (1981). Nor are we required to ignore the fact that the family court judge saw and heard the witnesses and was in a better position to evaluate their testimony. *Cherry v. Thomasson,* 276 S.C. 524, 280 S.E.2d 541 (1981).

## DISCUSSION

On appeal, the husband argues that the family court erred in reopening the parties' agreement, adjusting the value of the property, and ordering the husband to pay for half of the structural repairs to the property. We agree.

Initially, we note that neither party properly raises and challenges the finality of the November 8, 1995 order. We conclude that the order is properly viewed as a "final order" for purposes of property division. The order provided: "It is the purpose of this agreement to make a complete and final settlement of all claims the parties have against each other for alimony, separate maintenance and support, support for their child Jennifer, a division of property, and other related matters." The fact that the November 8 order provided that a decree of divorce would not be issued until after January 1, 1996 is of no consequence. It is clear from a review of the record that at the time of the November 8 order,

the actual entry of divorce was a mere formality delayed by the court at the request and for the benefit of the parties.[2]

We agree with the husband that the family court erred in concluding it was within the "equitable powers" of the court to reopen and modify the parties' agreement. As noted by this court in *Burns v. Burns*, 323 S.C. 45, 448 S.E.2d 571 (Ct.App. 1994), the law in South Carolina is exceedingly clear that the family court does not have the authority to modify court ordered property divisions. S.C.Code Ann. § 20–7–472 (Supp. 1996) ("The court's order as it affects distribution of marital property shall be a final order not subject to modification except by appeal or remand following proper appeal.").

For the foregoing reasons, the decision of the family court is

REVERSED.

CURETON, GOOLSBY, and STILWELL, JJ., concur.

---

**2.** The November 8 order finds the husband "has engaged in adulterous misconduct during the marriage of the parties and [the wife] is entitled to a divorce [from the husband].... A Supplemental Decree of Divorce shall be entered as soon as practical after January 1, 1996."