687 S.E.2d 714

PLANTATION A.D., LLC, Appellant,

v.

GERALD BUILDERS OF CONWAY, INC., and Jimmy Gerald, Individually, and as President of Gerald Builders of Conway, Inc., Respondents,

of whom Gerald Builders of Conway, Inc., is, Third–Party Plaintiff,

v.

Scott Pyle, ABD Development Inc. and Wachovia Securities, Inc., Third–Party Defendants.

No. 4632.

Court of Appeals of South Carolina.

Heard Sept. 1, 2009.
Decided Nov. 10, 2009.
Withdrawn, Substituted and Refiled Dec. 18, 2009.

200

Natale Fata, of Surfside Beach, for Appellant.

Desa Ballard and Stephanie Weissenstein, of West Columbia, J. Jackson Thomas, of Myrtle Beach, for Respondents.

HUFF, J.

Plantation A.D., LLC appeals the trial court's grant of summary judgment in favor of Gerald Builders and Jimmy Gerald (collectively Respondents). We reverse and remand.

## FACTS/PROCEDURAL HISTORY

In October of 2003, Jimmy Gerald, as President of Gerald Builders, entered into a Purchase Agreement to purchase 45 acres in the International Club PUD from Plantation A.D. (the Property). At the time the Purchase Agreement was executed, SouthTrust Bank had foreclosed on the Property. Gerald claimed he did not know about the foreclosure proceedings at the time he executed the Purchase Agreement. Soon after entering into the Purchase Agreement, Gerald Builders' attorney discovered the foreclosure action. However, Gerald continued negotiating with Scott Pyle of Plantation A.D. concerning a development deal for the Property.

Gerald Builders' attorney drafted a Memorandum of Understanding, which provided for a 50/50 profit participation between Gerald Builders and Plantation A.D. The Memorandum required Gerald Builders to fully satisfy the SouthTrust Bank first mortgage and repay a $950,000.00 loan to Ralph Jones and Charlie Floyd as the lots in the development were sold with the interest deducted from Plantation A.D.'s share of the profits. The Memorandum also provided: "Plantation A.D., LLC will cooperate fully with Jimmy Gerald in the closing of [the Property] on or before December 31, 2003 upon this signed understanding." Although the parties were listed as Jimmy Gerald of Gerald Builders as the Buyer and Scott Pyle of Plantation A.D. as the Seller, the Memorandum stated, "This memorandum shall not be deemed as a contract for the sale of Real Estate."

Gerald signed the Memorandum on November 3, 2003. According to Gerald, Pyle refused to accept the Memorandum and threatened to file for bankruptcy. Gerald authorized his attorney to offer the Memorandum to Pyle again two days later at the upset bid sale. Gerald claimed Pyle again rejected the Memorandum. Pyle, however, claimed that Plantation A.D. accepted the terms of the Memorandum and he signed the Memorandum when it was faxed to him on November 3.

Gerald Builders purchased the Property at the upset bid sale for $2,327,500.00. It borrowed $2,517,500.00 from Wachovia Bank to pay for the purchase. Gerald Builders began developing the property for a single family subdivision. In March of 2005, Pyle contacted Gerald and informed him that he knew of potential purchasers for the property. Gerald Builders agreed to the sale. On September 26, 2005, Gerald Builders sold the property to Signature Homes for $6,870,000.00. Gerald Builders' distribution from the sale was $1,510,222.23. It did not share the profit with Plantation A.D.

Plantation A.D. brought this action against Respondents asserting claims for breach of contract, breach of contract with fraudulent intent, fraud, unfair trade practices, unjust enrichment, constructive trust, and conversion. Respondents asseverated in their answer that Gerald's signature had been forged on the draft of the Memorandum and also asserted counterclaims and third party claims against Pyle and ADB Development due to the sale of the Property to Signature Homes. Plantation A.D., ADB Development, and Pyle denied Respondents' claims and asserted defenses including statute of limitations and unclean hands. In addition, Pyle asserted a claim for defamation.

While discovery motions and Plantation A.D.'s motions to amend its complaint and answer to Respondents' counterclaim and third-party claim were pending, the trial court granted summary judgment in favor of Respondents on Plantation A.D.'s claims in an order filed July 5, 2007. The trial court found the Memorandum was a complete, unambiguous agreement and therefore parol evidence was not admissible. It held the Memorandum lacked consideration and was unenforceable. The court also found the Memorandum contained two conditions precedent: 1) Gerald Builders had to purchase the property from Plantation A.D. (and not from the masterinequity or some other party); and 2) Gerald Builders had to develop the property and not simply resell it. The court held as these conditions precedent did not occur, the Memorandum was void. In addition, the court ruled there was no evidence of individual liability of Gerald. Plantation A.D. filed a Rule 59, SCRCP, motion asking the court to alter or amend the judgment. It subsequently amended its motion and included

excerpts from depositions taken after the order granting summary judgment.

While the Rule 59 motion was pending, the court ruled on other pending motions. The court denied Plantation A.D.'s motion to amend the complaint as summary judgment had already been granted, but allowed Plantation A.D. leave to amend its answer to the third-party complaint and counterclaim. It also ruled on discovery motions. On November 7, 2007, Plantation A.D. filed a motion pursuant to Rule 60, SCRCP, asserting in their Second Amended Answer and Counterclaim, Respondents made allegations contrary to the arguments they had made previously to the court.

The trial court denied the Rule 59 motion in an order filed December 10, 2007. The court provided all other pending motions would be heard before a judge with proper jurisdiction. It did not address Plantation A.D.'s Rule 60, SCRCP, motion. This appeal followed.

## STANDARD OF REVIEW

In reviewing the grant of summary judgment, the appellate court applies the same standard that governs the trial court under Rule 56(c), SCRCP *Nexsen v. Haddock*, 353 S.C. 74, 77, 576 S.E.2d 183, 185 (Ct.App.2002). Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c). "In determining whether any triable issues of fact exist, the court must view the evidence and all reasonable inferences that may be drawn from the evidence in the light most favorable to the non-moving party." *Brockbank v. Best Capital Corp.*, 341 S.C. 372, 378–79, 534 S.E.2d 688, 692 (2000). "[I]n cases applying the preponderance of the evidence burden of proof, the non-moving party is only required to submit a mere scintilla of evidence in order to withstand a motion for summary judgment." *Hancock v. Mid–South Management Co.*, 381 S.C. 326, 330, 673 S.E.2d 801, 803 (2009). "However, in cases requiring a heightened burden of proof or in cases applying federal law, we hold that the non-moving party must submit

more than a mere scintilla of evidence to withstand a motion for summary judgment." *Id.* at 330–31, 673 S.E.2d at 803.

## LAW/ANALYSIS

I. Consideration

Plantation A.D. argues the trial court erred in holding as a matter of law the Memorandum was void for lack of consideration. We agree.

■■■ "It is a question of law for the court whether the language of a contract is ambiguous." *S.C. Dep't of Natural Res. v. Town of McClellanville*, 345 S.C. 617, 623, 550 S.E.2d 299, 302–03 (2001). "Whether a contract is ambiguous is to be determined from the entire contract and not from isolated portions of the contract." *Farr v. Duke Power Co.*, 265 S.C. 356, 362, 218 S.E.2d 431, 433 (1975). An ambiguous contract is one that can be understood in more ways than just one or is unclear because it expresses its purpose in an indefinite manner. *Klutts Resort Realty, Inc. v. Down'Round Dev. Corp.*, 268 S.C. 80, 89, 232 S.E.2d 20, 25 (1977); *see Hawkins v. Greenwood Dev. Corp.*, 328 S.C. 585, 592, 493 S.E.2d 875, 878 (Ct.App.1997) ("A contract is ambiguous when it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages, and terminology as generally understood in the particular trade or business.") (internal citation and quotation omitted).

■■■ Construction of an ambiguous contract is a question of fact. *Skull Creek Club Ltd. P'ship v. Cook & Book, Inc.*, 313 S.C. 283, 286, 437 S.E.2d 163, 165 (Ct.App.1993). When an agreement is ambiguous, the court should seek to determine the parties' intent. *Ebert v. Ebert*, 320 S.C. 331, 338, 465 S.E.2d 121, 125 (Ct.App.1995). Any ambiguity in a contract, doubt, or uncertainty as to its meaning should be resolved against the party who prepared the contract or is responsible for the ambiguous language. *Myrtle Beach Lumber Co. v. Willoughby*, 276 S.C. 3, 8, 274 S.E.2d 423, 426 (1981). "The parol evidence rule prevents the introduction of extrinsic evidence of agreements or understandings contemporaneous

with or prior to execution of a written instrument when the extrinsic evidence is to be used to contradict, vary, or explain the written instrument." *Redwend Ltd. P'ship v. Edwards,* 354 S.C. 459, 471, 581 S.E.2d 496, 502 (Ct.App.2003). However, if a contract is ambiguous, parol evidence is admissible to ascertain the true meaning of the contract and the intent of the parties. *Klutts Resort Realty,* 268 S.C. at 89, 232 S.E.2d at 25.

 "The necessary elements of a contract are an offer, acceptance, and valuable consideration." *Roberts v. Gaskins,* 327 S.C. 478, 483, 486 S.E.2d 771, 773 (Ct.App.1997). "Valuable consideration to support a contract may consist of some right, interest, profit or benefit accruing to one party or some forbearance, detriment, loss or responsibility given, suffered or undertaken by the other." *Prestwick Golf Club, Inc. v. Prestwick Ltd. P'ship,* 331 S.C. 385, 389, 503 S.E.2d 184, 186 (Ct.App.1998). "A forbearance to exercise a legal right is valuable consideration." *Id.*

 Plantation A.D. asserts the Memorandum does state consideration. Item 3 of the Memorandum provides: "Plantation A.D., LLC will cooperate fully with Jimmy Gerald in the closing of the 45 acres on or before December 31, 2003 upon this signed understanding." As this provision is indefinite, we hold the trial court erred in ruling the Memorandum was unambiguous and in refusing to consider parol evidence. A fact finder may view the "cooperation" listed in Item 3 as a responsibility undertaken by Plantation A.D. In his affidavit, Pyle explained Plantation A.D. cooperated by ceasing negotiations with other prospective buyers and refraining from filing bankruptcy, thus allowing the upset bid sale to Gerald Builders to go forward. Therefore, Plantation A.D. produced more than a "scintilla of evidence" that the Memorandum was supported by valuable consideration.

We find the trial court erred in holding as a matter of law the contract was not supported by valuable consideration.

II. Conditions precedent

Plantation A.D. argues the trial court should not have found conditions precedent at the summary judgment stage. We agree.

■■■ Respondents assert this argument is not preserved because Plantation A.D. failed to make it when Respondents raised the issue at the summary judgment hearing. Plantation A.D. did not address the issue of conditions precedent at the hearing but did fully address the issue in its Rule 59 motion. The Respondents had the burden of proof on this issue. *See Youmans v. S.C. Dep't of Transp.*, 380 S.C. 263, 281–82, 670 S.E.2d 1, 10 (Ct.App.2008) (stating defendant asserting an affirmative defense bears the burden of its proof), *cert. granted* (July 9, 2009); *Floyd v. St. Paul Fire & Marine Ins. Co.*, 285 S.C. 148, 150, 328 S.E.2d 132, 132 (Ct.App.1985) (noting defendant asserted as an affirmative defense plaintiff had not complied with condition precedent). Plantation A.D. is not attempting to raise a new theory of law but rather simply asserts that there is a genuine issue of material fact as to whether the agreement between the parties actually includes the conditions precedent as found by the trial court. As the issue of whether the Memorandum included the conditions precedent was raised to and ruled on by the trial court, we find the issue properly before this court. *See Wilder Corp. v. Wilke*, 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998) ("It is axiomatic that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial judge to be preserved for appellate review.").

■■■■ The trial court found the Memorandum contained the following two conditions precedent: 1) Gerald Builders had to purchase the property from Plantation A.D. (and not from the master-in-equity or some other party); and 2) Gerald Builders had to develop the property and not simply resell it.

A condition precedent entails something that is essential to a right of action, as opposed to a condition subsequent, which is something relied upon to modify or defeat the action. In contract law, the term connotes any fact other than the lapse of time, which, unless excused, must exist or occur before a duty of immediate performance arises. The question of whether a provision in a contract constitutes a condition precedent is a question of construction dependent on the intent of the parties to be gathered from the language they employ.

*Worley v. Yarborough Ford, Inc.*, 317 S.C. 206, 210, 452 S.E.2d 622, 624 (Ct.App.1994) (internal citations and quotation marks omitted). Generally, "a condition precedent may not be implied when it might have been provided for by the express agreement." *Id.* at 210, 452 S.E.2d at 625.

The Memorandum does not expressly set forth the conditions precedent as found by the trial court. The Respondents assert the condition that Gerald Builders purchase the property from Plantation A.D. can be implied from the designation of the parties as "Seller" and "Buyer" although the Memorandum clearly states it "shall not be deemed as a contract for the sale of Real Estate." Respondents also claim the development condition is implied from Paragraph 2, which provides for the repayment of a loan to Ralph Jones and Charlie Floyd on a per lot basis. The profit participation provision, however, does not include similar language concerning payment on a per lot basis. We find the conditions cannot as a matter of law be implied from the Memorandum. Accordingly, we hold the trial court erred on this issue.

### III. Individual liability of Gerald

Plantation A.D. argues the trial court erred in granting summary judgment as to Gerald individually. We agree.

Section 33–6–220(b) of the South Carolina Code (2006) states: "Unless otherwise provided in the articles of incorporation, a shareholder of a corporation is not personally liable for the acts or debts of the corporation *except that he may become personally liable by reason of his own acts or conduct.*" (Emphasis added). This court recognized:

> A director or officer of a corporation does not incur personal liability for its torts merely by reason of his official character; he is not liable for torts committed by or for the corporation unless he has participated in the wrong. Accordingly, directors not parties to a wrongful act on the part of other directors are not liable therefor. If, however, a director or officer commits or participates in the commission of a tort, whether or not it is also by or for the corporation, he is liable to third persons injured thereby, and it does not matter what liability attaches to the corporation for the tort. . . .

*BPS, Inc. v. Worthy,* 362 S.C. 319, 327, 608 S.E.2d 155, 160 (Ct.App.2005) (quoting 19 Am.Jur.2d *Corporations,* § 1382 (2004)). Thus, the court held the president of a corporation was not shielded from direct liability in tort for his own actions and was personally liable for any tortuous acts he participated in or directed. *Id.* at 328, 608 S.E.2d at 160.

■■■ "Conversion is the unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of the condition or the exclusion of the owner's rights." *Ellis v. Davidson,* 358 S.C. 509, 527, 595 S.E.2d 817, 826 (Ct.App.2004).

The trial court held Gerald was not individually liable for Plantation A.D.'s claims. However, as stated above, Gerald's status as an officer or a shareholder of the corporation does not automatically shield him from liability. After the sale of the Property to Signature Homes, Gerald Builders deposited the profit from the sale into its checking account. Since then, Gerald has made disbursements from the account, thus assuming ownership of funds allegedly belonging to Plantation A.D. In addition, Gerald made representations to Plantation A.D. regarding the Memorandum and plans for the property. We find Plantation A.D. has presented evidence sufficient to overcome summary judgment that Gerald committed or participated in the commission of conversion and fraud. Accordingly, we find the trial court erred in granting summary judgment to Gerald individually.

## CONCLUSION

For the above stated reasons, the trial court's order granting summary judgment to Gerald Builders and Gerald individually is REVERSED and the matter REMANDED to the trial court.

**REVERSED AND REMANDED.**

THOMAS and PIEPER, JJ., concur.