# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Jessica Orzech Thompson n/k/a Jessica Orzech Pares,
Appellant,

v.

Robert Guignard Thompson, Respondent.

Appellate Case No. 2016-001770

———

Appeal From Charleston County
Daniel E. Martin, Jr., Family Court Judge

———

Opinion No. 5675
Heard December 4, 2018 – Filed August 7, 2019

———

## REVERSED AND REMANDED

———

Gregory Samuel Forman, of Gregory S. Forman, PC, of
Charleston, for Appellant.

Megan Catherine Hunt Dell, of Dell Family Law, P.C., of
Charleston; and Theresa Marie Wozniak Jenkins, of
Theresa Wozniak Jenkins, Attorney at Law, LLC, of
Flint, Michigan, both for Respondent.

———

**WILLIAMS, J.:** In this domestic relations matter, Jessica Pares (Wife) appeals
the family court's Order from Rule to Show Cause/Motion, arguing the family
court erred in (1) granting Robert Thompson's (Husband) Rule 60(b)(5), SCRCP
motion; (2) refusing to give Wife another opportunity to refinance the former
marital home (the Home); (3) failing to make Husband solely responsible for the
lien with Palmetto Coastal Investments, LLC (the Palmetto Lien); and (4)

awarding attorney's fees to Husband and not awarding attorney's fees to Wife. We reverse and remand.

## FACTS/PROCEDURAL HISTORY

Husband and Wife married on October 13, 2002. During the marriage, the parties owned and operated Palmetto Tree Service, LLC (Palmetto Tree). Wife managed the accounting and clerical tasks, and Husband worked at various job sites planting, removing, and fertilizing trees.

Husband and Wife separated around April 15, 2010, and they were divorced on July 26, 2011. After the parties separated, but prior to their divorce, Husband and Wife entered into a written final settlement agreement (the Agreement) resolving all issues arising out of their marriage except for the matter of divorce. On October 8, 2010, the family court issued a final order (the Final Order), which approved the Agreement, incorporated the Agreement, and indicated the Agreement was issued as the enforceable order of the court.[1]

The Final Order provided "[a]s soon as she is able, Wife shall assume or re-finance all loans on [the Home] in her own name. . . . Wife must place [the Home] on the market for sale on or before June 1, 2025." The Final Order also provided Husband and Wife would each be responsible for their own debts, indemnify each other against liability for those debts, and pay all accounts and obligations in a timely manner so as to not harm the other party's credit. The Final Order made Husband responsible for all debts associated with Palmetto Tree and indemnified Wife from Palmetto Tree's debts. Finally, the Final Order provided:

> It is the intent of the parties that the provisions of [the Final Order] shall govern all rights and obligations of the parties as well as all rights of modification; and, further, that the terms and conditions of [the Final Order] . . . shall not be modifiable by the parties or any court without the written consent of Husband and Wife . . . . Neither the Family Courts of the State of South Carolina nor any other court shall have jurisdiction to modify, supplement, terminate, or amend [the Final Order] or the rights and responsibilities of the parties hereunder.

---

[1] Hereinafter, the Agreement is referred to as the Final Order because the Agreement was incorporated into the Final Order.

In August 2011, Wife, on the advice of her counsel—individually and on behalf of Palmetto Tree—consented to the entry of the Palmetto Lien in the amount of $42,500. The Palmetto lien resolved a lawsuit initiated by Palmetto Coastal Investments, LLC, on December 29, 2009, after payments were not made pursuant to a January 31, 2008 commercial lease that was signed by Wife personally and on behalf of Palmetto Tree.[2]

After entry of the Final Order, Wife paid the mortgages on the Home from accounts held by Palmetto Tree. Husband resided in the Home without Wife from October 2012 until November 2013. During that time, Wife continued to pay the mortgages through June 2013,[3] but no further mortgage payments were made following the June 2013 payment until February 2015. Wife testified she believed Husband would pay the mortgages while he resided in the Home. She stated she presented Husband with a lease that required Husband to pay rent, but Husband refused to sign the lease. Husband testified Wife did not provide him with a proposed lease, and there was no agreement for him to pay the mortgages because Wife paid all of the bills out of the Palmetto Tree account. Husband also noted the court did not order him to pay the mortgages. Husband testified that at some point, he became aware he would have to start paying the mortgages after he and Wife argued about the payments. However, Husband indicated he could not pay the mortgages because Wife interfered with his business by withholding checks and insurance information, opening a competing business, and disconnecting his business phone. Husband and Wife each included the Home's mortgage payments on their individual financial declarations in 2013.

Wife testified she attempted to make partial payments on the mortgages after Husband vacated the Home in November 2013. However, Wife indicated the bank would only allow her to make the payments in full. Wife said she utilized the Home as a rental property and received approximately $70,000 in rental income. She stated she did not attempt to make further payments on the mortgages because

---

[2] Wife indicated she and Husband agreed to consent to the Palmetto Lien. Husband stated he was personally served with notice of the lawsuit, but he lacked knowledge of any further proceedings and of the Palmetto Lien.

[3] The June 2013 payment was a partial payment.

she had to utilize the money to fix damage Husband caused to the Home[4] and the bank would not accept partial payments.

In October 2014, Wells Fargo Bank filed an action to foreclose on the Home because the first mortgage was not paid.[5] Wells Fargo's complaint indicated that as of June 1, 2013, the principal sum of $269,135.73, with an interest rate of 5.875%, advances, late charges, and costs and disbursements of the action, including attorney's fees, were due. On January 2, 2015, Wife e-mailed Husband to inform him of the scheduled foreclosure. She indicated she did not intend to lose the Home but stated it "is in my best interest to prolong the process as long as possible." Wife indicated that although her credit was damaged, her new husband had good credit, so she would not be affected if the Home went into foreclosure. Wife wrote, "I'm assuming you are trying to repair your credit so that you can purchase a home for yourself and do not want a foreclosure on your credit history." Wife gave Husband four options for the Home: (1) do nothing and have the Home go into foreclosure; (2) sign a quit claim deed; (3) allow Wife to sell the Home to her new husband's parents; or (4) sign a quit claim deed so Wife's father could buy Husband's right to the equity in the Home for $60,000. Wife's e-mail provided, "These are the only options available. There is no negotiating. You can either have good credit and be able to buy a new home for yourself now or have bad credit indefinitely. Either way I'm in the [Home] until 2025." In February 2015, Wife paid around $67,000 to prevent foreclosure.

Wife indicated she made multiple attempts to refinance the Home, but those attempts were frustrated by liens on the Home[6] and the foreclosure action, for

---

[4] Wife testified there were plumbing and flooring issues and that the appliances were broken. However, a woman who rented the home in November 2013, shortly after Husband moved out, indicated the home was in fine condition, but it needed cleaning and upkeep.

[5] While the record indicates neither of the mortgages were paid from June 2013 to February 2015, there is no indication that the second mortgage was foreclosed on.

[6] Wife hired someone to determine if there were any liens with joint liability between the parties, joint liability between Wife and Palmetto Tree, or liability exclusively related to Husband or Palmetto Tree. This search found multiple liens against Husband, a judgment filed by the parties' neighborhood against Husband and Wife jointly, and the Palmetto Lien. Testimony indicated Ford Motor

which she blamed Husband.  Wife executed a deed giving her new husband an interest in the Home.  She testified Nationstar Mortgage indicated if she made six months of payments, used her new husband's credit and ownership interest in the Home, and had her new husband co-sign for her, she would likely qualify to refinance the Home.

On March 10, 2015, Husband filed a rule to show cause and motion for relief pursuant to Rule 60(b)(5), SCRCP.  Husband argued Wife was in contempt for failing to pay the mortgages and for failing to refinance the Home.  In the alternative, Husband argued under Rule 60(b)(5), it was inequitable for the Final Order to have prospective application concerning the ownership rights and obligations associated with the Home due to Wife's unilateral destruction of Husband's credit and Wife's failure to abide by the family court's order to resolve the matter in an equitable fashion.  Husband asserted ownership and possession of the Home should be transferred to him and Wife should be responsible for all of the lien judgments attached to the Home, including the Palmetto Lien.  Alternatively, Husband contended the family court should immediately list the Home for sale and have the proceeds divided pursuant to the Final Order.

The family court held hearings on the Rule 60(b)(5) motion on January 13, 2016, and April 6, 2016.

In response to Husband's rule to show cause, the family court did not find Wife in contempt of court for her failure to pay or timely pay the mortgages or her failure to refinance the Home.  However, the family court granted Husband's Rule 60(b)(5) motion, ordering that the Home be immediately listed for sale because the family court found "it is no longer equitable for [the Final Order], as applied to [the Home], [to] have prospective application . . . the circumstances have changed so materially and significantly between these parties that maintaining a financial entanglement between them creates a clearly onerous, unforeseen, and oppressive hardship on both parties."  The family court ordered Husband and Wife to each pay 50% of the Palmetto Lien from the proceeds of the sale of the Home.  The family court ordered Wife to pay all of Husband's attorney's fees and costs.

---

Company had a lien against Wife, and Wife's attorney indicated there may be other judgments against Wife.

Wife filed a motion to reconsider on July 21, 2016. The family court denied Wife's motion on July 27, 2016. This appeal followed.

## STANDARD OF REVIEW

The appellate court reviews decisions of the family court de novo. *Stoney v. Stoney*, 422 S.C. 593, 596, 813 S.E.2d 486, 487 (2018) (per curiam). De novo review allows the appellate court to make its own findings of fact, but the appellate court is not required to ignore the family court's superior position to make credibility determinations. *Lewis v. Lewis*, 392 S.C. 381, 384–85, 709 S.E.2d 650, 651–52 (2011). "Consistent with this de novo review, the appellant retains the burden to show that the family court's findings are not supported by a preponderance of the evidence; otherwise, the findings will be affirmed." *Ashburn v. Rogers*, 420 S.C. 411, 416, 803 S.E.2d 469, 471 (Ct. App. 2017).

## LAW/ANALYSIS

### I.    Rule 60(b)(5), SCRCP

Wife first argues the family court erred by granting Husband's Rule 60(b)(5), SCRCP motion. We agree because we find the family court did not have jurisdiction to modify the Final Order to require Wife to immediately sell the Home.[7]

Rule 60(b)(5), SCRCP, provides, "On motion and upon such terms as are just, the court may relieve a party . . . from a final judgment, order, or proceeding . . . [if] it is no longer equitable that the judgment should have prospective application."

Generally, the family court has the authority to modify any order issued by the family court. S.C. Code Ann. § 63-3-530(A)(25) (2010) (stating the family court has exclusive jurisdiction to modify or vacate any order issued by the family court). However, subsection 20-3-620(C) of the South Carolina Code (2014) provides, "The [family] court's order as it affects distribution of marital property

---

[7] Although Wife does not specifically contest the family court's subject matter jurisdiction to modify the Final Order, we address this issue on appeal because "[l]ack of subject matter jurisdiction cannot be waived and should be taken notice of by [the appellate court] on its own motion." *Eichor v. Eichor*, 290 S.C. 484, 487, 351 S.E.2d 353, 355 (Ct. App. 1986).

shall be a final order not subject to modification except by appeal or remand following proper appeal."  This court has found "the law in South Carolina is exceedingly clear that the family court *does not* have the authority to modify court[-]ordered property divisions."  *Simpson v. Simpson*, 404 S.C. 563, 571, 746 S.E.2d 54, 58–59 (Ct. App. 2013) (quoting *Green v. Green*, 327 S.C. 577, 581, 491 S.E.2d 260, 262 (Ct. App. 1997)); *see also* Roy T. Stuckey, *Marital Litigation in South Carolina* 375–77 (4th ed. 2010) (discussing exceptions to the family court's exclusive jurisdiction to modify an order issued by it).  This court has specified "it is beyond the equitable powers of the family court to reopen and modify court[-] ordered property divisions."  *Simpson*, 404 S.C. at 573, 746 S.E.2d at 59; *see also Green*, 327 S.C. at 581, 491 S.E.2d at 262 (holding the family court erred by concluding it was within its equitable powers to reopen and modify portions of a property settlement agreement incorporated into a divorce decree).  However, an order of the family court *may* be modified if "jurisdiction was specifically reserved in the decree or if allowed by statute."  *Hayes v. Hayes*, 312 S.C. 141, 144, 439 S.E.2d 305, 307 (Ct. App. 1993).  Thus, "[e]xcept for those matters over which a court retains continuing jurisdiction, terms of a final property settlement agreement, once approved, are binding on the parties and the court." *Clark v. Clark*, 423 SC 596, 610, 815 S.E.2d 772, 779 (Ct. App. 2018) (quoting *Price v. Price*, 325 S.C. 379, 382, 480 S.E.2d 92, 93 (Ct. App. 1996)).

This court has found the family court has jurisdiction to reconsider an otherwise un-modifiable property division in order to correct clerical errors and in exceptional circumstances.  *See Clark*, 423 S.C. at 608–10, 815 S.E.2d at 779–80; *Simmons v. Simmons*, 392 S.C. 412, 414–15, 709 S.E.2d 666, 667 (2011); *Johnson v. Johnson*, 310 S.C. 44, 47, 425 S.E.2d 46, 48 (Ct. App. 1992).

In *Clark*, this court allowed for the modification of a court-ordered property division using Rule 60(a), SCRCP,[8] to correct a clerical error that accounted for the same trailer twice in the court order approving the parties' settlement agreement regarding the equitable division of property.  *Clark*, 423 S.C. at 608–10, 815 S.E.2d at 779–80.  However, this court emphasized "[t]he family court's correction of clerical errors may not extend to 'chang[ing] the scope of the judgment.'" *Id.* at 610, 815 S.E.2d at 779 (second alteration in original) (quoting *Brown v. Brown*, 392 S.C. 615, 622, 709 S.E.2d 679, 683 (Ct. App. 2011)).  No such clerical errors

---

[8] "Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders."  Rule 60(a), SCRCP.

are present in this case to establish subject matter jurisdiction to modify the Final Order.

In *Simmon*s, our supreme court found the family court had subject matter jurisdiction to revisit a court-approved divorce settlement agreement when the alimony portion of the agreement was declared void on appeal. 392 S.C. at 414–15, 709 S.E.2d at 667. The court recognized the parties' intended agreement regarding alimony was "inextricably connected to the agreed upon division of marital property, and vice versa" and noted in that context, "and in view of Rule 60(b)(5), SCRCP, basic principles of equity suggest that all issues should be revisited by the family court." *Id*. at 415–16, 709 S.E.2d at 668. Such exceptional circumstances are not found in the instant case, as none of the provisions of the Final Order have been voided. Thus, we do not believe the court's use of Rule 60(b)(5) in *Simmons* may be applied to the instant case.

Husband cites *Johnson*[9] in support of his argument that Rule 60(b)(5) may be used to modify an otherwise un-modifiable agreement. However, we find the facts in that case are distinguishable as *Johnson* involved exceptional circumstances. In *Johnson*, this Court used Rule 60(b)(5) to find that if justice so requires, the court may relieve a party of a final consent order if it was based on a vacated final consent order in a related case. *Id*. at 47, 425 S.E.2d at 48. The Final Order in this case was the result of a single agreement that was incorporated into the Final Order, and it was not based on a separate order that was subsequently vacated. Thus, we do not believe the court's use of Rule 60(b)(5) in *Johnson* may be applied to the instant case.

Furthermore, since *Johnson*, this Court has indicated "[a] family court order can be modified only when jurisdiction was specifically reserved in the decree or if allowed by statute." *Hayes*, 312 S.C. at 144, 439 S.E.2d at 307. When this Court decided *Hayes*, Rule 60(b)(5) was already in effect. *See Evans v. Gunter*, 294 S.C. 525, 529, 366 S.E.2d 44, 47 (Ct. App. 1988) (finding Rule 60(b)(5) is based on the historical power of a court of equity to modify its decree in light of subsequent conditions). Despite the existence of Rule 60(b)(5), this court indicated "[t]here is no statutory authority for modifying an order of equitable distribution." *Hayes*, 312 S.C. at 144, 439 S.E.2d at 307.

---

[9] 310 S.C. 44, 425 S.E.2d 46.

Such exceptional circumstances were not found in *Green*. 327 S.C. 577, 491 S.E.2d 260. In that case, the husband and his expert fraudulently concealed and withheld evidence that a building that was divided in the parties' court-approved property agreement needed approximately $36,500 in repairs. *Id.* at 578–79, 491 S.E.2d at 261. The family court ordered the husband to pay the wife for repairs to the building, finding it was within its equitable powers to adjust the value of the building. *Id.* at 579–80, 491 S.E.2d at 261–62. This court reversed the family court's modification, finding the family court erred in concluding it had equitable powers to reopen and modify the parties' agreement because "the law in South Carolina is exceedingly clear that the family court does not have the authority to modify court[-]ordered property divisions." *Id.* at 581, 491 S.E.2d at 262.

In this case, there were no clerical errors to be corrected, and we find there were no exceptional circumstances to warrant modification of the property agreement. Accordingly, we reverse the family court's decision to grant Husband's 60(b)(5), SCRCP motion because the family court lacked subject matter jurisdiction to modify the Final Order.[10]

## II.    Attorney's Fees

Wife argues the family court erred in awarding attorney's fees to Husband and not awarding attorney's fees to Wife. Because we find the family court lacked subject matter jurisdiction to grant Husband's Rule 60(b)(5), SCRCP motion and we reverse on that issue, we remand the issue of attorney's fees for reconsideration by the family court. *See Rogers v. Rogers*, 343 S.C. 329, 334, 540 S.E.2d 840, 842 (2001) (holding that because "the beneficial result obtained by counsel is a factor in awarding attorney's fees, when that result is reversed on appeal, the attorney's fee award must also be reconsidered").

## CONCLUSION

Based on the foregoing, the family court's order is

---

[10] We decline to address the family court's refusal to grant Wife another opportunity to refinance the home or the family court's requirement that Husband and Wife each pay fifty percent of the Palmetto Lien from the proceeds of the marital home because our decision on the foregoing issue is dispositive. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (ruling an appellate court need not address remaining issues on appeal when the disposition of a prior issue is dispositive).

**REVERSED and REMANDED.**

**HUFF and SHORT, JJ., concur.**