**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Cheryl DiMarco, Appellant,

v.

Brian DiMarco, Respondent.

Appellate Case No. 2017-000734

———

Appeal From Greenville County
Joseph W. McGowan, III, Family Court Judge

———

Unpublished Opinion No. 2020-UP-197
Heard February 3, 2020 – Filed June 24, 2020

———

**REVERSED AND REMANDED**

———

Clarence Rauch Wise, of Greenwood, for Appellant.

J. Falkner Wilkes, of Greenville, for Respondent.

———

**PER CURIAM:** In this family court action regarding the division of marital property, Cheryl DiMarco ("Wife") sought an order against her ex-husband, Brian DiMarco ("Husband") to: (1) compel Husband's cooperation with accountant, Catherine Stoddard; (2) compel the division of various mutual and retirement accounts pursuant to Stoddard's analysis; and (3) recoup Wife's attorney's fees and costs. The family court ruled that, pursuant to a previous order from the year 2004, accountant John Godwin's analysis was the proper basis for the court's final

judgment in the matter. Wife argues the family court erred by enforcing the previous order appointing Godwin as the accountant because that order was later modified by subsequent orders. We reverse the family court's decision and remand for a hearing to calculate the present-day valuation of the accounts and to order their equitable distribution.

## FACTS/PROCEDURAL HISTORY

Since their original decree of separation, the parties have filed multiple contempt actions claiming that the other has failed to comply with a court order regarding the division of various investment and retirement accounts. For proper context, we will provide a brief history of the litigation surrounding this issue.

**Relevant Prior Litigation**

1. <u>1996 Order</u>

The parties initially separated on April 7, 1995. Following a two-day divorce hearing, the parties reached an agreement on all matters, encapsulated by the Decree of Separate Maintenance ("the 1996 Order") issued by the Honorable Amy Sutherland on September 20, 1996. The 1996 Order provided in relevant part:

> That the parties have maintained the following accounts: Monetta Fund, Inc.; Kaufmann Fund, Inc.; Janus Fund; Janus Twenty Fund; Janus Mercury Fund; Fidelity Contrafund; Fidelity Asset Manager; Charles Schwab; Alcoa Deferred Comp Plan; and an Alcoa Savings Plan. That each party shall receive 50 percent of the net asset value of said accounts as of the date of this agreement (August 1, 1996). It is understood that the Plaintiff, [Husband], has placed additional monies in some of these accounts since the parties['] date of separation (April 7, 1995), and to the extent that the Plaintiff can provide written proof of the number of shares he has purchased in any account since April 7, 1995, he is entitled to deduct that number of shares off of the top of each fund, and the parties will split 50/50 as their equitable share [of] the value of those funds remaining as of August 1, 1996.

Following the issuance of the 1996 Order, the only fund that was properly divided was the Monetta fund in the year 2003. Husband filed a contempt action against Wife and the parties were back before the court on March 11, 2004.

2. 2004 Order

The parties came to an agreement, and a "Final Order" was issued by the Honorable Stephen S. Bartlett on March 25, 2004 ("the 2004 Order"), which provided:

> That pursuant to a previous order dated September 20, 1996[,] under Case No. 1995-DR-23-1819 that each of the parties would receive 50% of the net asset value of the following accounts as of August 1, 1996[,] minus any contributions Plaintiff made since April 7, 1995, to which Plaintiff provided his proportionate share of the increase or decrease in value of his additional contributions: Monetta Fund, Inc., Kaufman Fund, Inc., Janus Fund, Janus Twenty Fund, Janus Mercury Fund, Fidelity Contrafund, Fidelity Asset Manager, Charles Schwab, Alcoa Deferred Comp Plan, and Alcoa Savings Plan. The parties have agreed to allow John Godwin of Godwin and Associates, an accountant, to review and determine the value of the accounts (including any passive increase or decrease in value) in order to make an equitable distribution[,] and each shall be bound by the accountant's decision. Should the amount be less than $60,000, [Wife] shall be responsible for payment of the accountant's fees, otherwise [Husband] shall be responsible for said fees. If Mr. Godwin is unavailable, the parties have agreed that each shall submit a name of an accountant to the other party[.] [I]f the parties fail to agree on either accountant, then those accountants shall provide a third name to be used for the evaluation. Each of the parties agree to fully cooperate with the accountant and provide any and all information required.

Godwin completed his report and determined that Wife's share was $42,768.05. Wife disagreed with Godwin's analysis because she never got to meet or speak with him. Further, per Stoddard and Husband's own testimony, Godwin's analysis did not

account for passive increase or decrease in the account as of 2004, only those increases from April 1995 until August 1, 1996. This led to Husband bringing Wife before the Honorable Rochelle Y. Conits on March 12, 2008, for various issues, including contempt actions. Husband testified that Judge Conits wanted Godwin's analysis brought up to date because too much time had passed between the 2004 Order and the year 2008. However, Godwin was unavailable in 2008, so accountant Pete Tiffany was selected as the accountant pursuant to a final order dated April 18, 2008. Husband subsequently filed a motion to alter, amend and/or reconsider, and Judge Conits heard the matter on June 23, 2008.

### 3. 2008 Order

On August 4, 2008, Judge Conits issued an order ("the 2008 Order") finding that the 2004 Order controlled the division of the parties' mutual and retirement funds. Further, the 2008 Order provided that, "accountants Mark Swanson and Roger Clinkscales, together, are to recommend a third (3rd) accountant to review the mutual funds and retirement accounts of the parties, in accordance with the previous Final Order . . . ." Sometime after the issuance of the 2008 Order, Catherine Stoddard was selected as the neutral accountant. The process stalled due to discrepancies on the scope of Stoddard's analysis and the failure to receive engagement letters from both parties. Wife filed a contempt action with the court on October 31, 2014.

### 4. 2015 Order

On March 15, 2015, the Honorable Harry L. Phillips issued an order ("the 2015 Order") requiring both parties to sign an engagement letter for Stoddard within thirty days. The 2015 Order held the contempt matter in abeyance pending Stoddard's accounting, with the express provision that "[i]f either party fails to cooperate[] or otherwise hinders the efforts of the accountant, the other party shall be entitled to file for relief from th[e] Court." Stoddard completed a preliminary analysis in the year 2015. She deduced that Wife was entitled to $205,158.

Stoddard was unable to properly assess the Alcoa Savings Plan because the plan was rolled over to Dean Witter in June of 1999, and Stoddard was unable to obtain Husband's Dean Witter statements. Without these statements, Stoddard stated she could not adequately deduct Husband's contributions to the various accounts after 1996 because she needed to know when and where the contributions were made to account for proper market changes. Thus, Stoddard was unable to conduct a more comprehensive analysis. Wife filed the present action to: (1) compel Husband's

cooperation with the accountant, (2) compel the division of the accounts per the terms of Ms. Stoddard's analysis, and (3) recoup her attorney's fees and costs.

## Current Matter

The hearing on this matter took place over the course of two nonconsecutive days, June 5, 2016 and August 8, 2016. The Honorable Joseph McGowan presided over the proceedings. After the first day of proceedings, the parties reached an agreement to immediately divide the balance of the Janus and Kaufman accounts. The division amount was to be determined based upon the date the actual division occurred.[1] At the hearing, the account valuations prepared by both Wife's expert witness and Husband's expert witness were offered into evidence. Although Stoddard testified she was unable to complete a more precise analysis, her preliminary estimate was that Wife was due $205,158. Conversely, the calculation produced by Husband's expert, James Stuckey, showed Wife was due $118,306. Both experts testified that the totals would change depending on the date of disbursement. On the final day of the proceedings, Judge McGowan ruled that the 2004 Order was binding on the parties, therefore, the division of the accounts was to be made pursuant to Godwin's calculation. Judge McGowan found that Husband was to pay Wife $42,768.05, plus the post-judgment interest accumulated from March 25, 2004 to August 8, 2016.

The family court issued its final order on February 16, 2017, crystallizing its August 8, 2016 ruling. The court found that Godwin completed his analysis, the parties agreed to be bound by Godwin's calculation, and Wife was due a net payment amount of $42,786.05. Further, neither party lodged any objections to Godwin's report with the court, filed a motion for reconsideration after Godwin completed his report, nor appealed Godwin's conclusions. Therefore, the court found that Godwin's report represented the final judgment of the court. The court did not find any party in contempt. Although the court believed there was significant evidence that Husband failed to cooperate with Stoddard, the court declined to find Husband in contempt of the 2008 and 2015 Orders appointing Stoddard because Godwin's report pursuant to the 2004 Order rendered Stoddard's analysis unnecessary. The court further subtracted Wife's Fidelity IRA balance, in the amount of $8,495.53, from Godwin's calculation leaving $34,272.53. Because Husband had not paid Wife following the completion of Godwin's analysis, the court found that the twelve percent (12%) legal rate of post-judgment interest would be added to the $34,272.53

---

[1] The court later found Wife's share to be $72,151.17. This amount was transferred to Wife before the next hearing date on August 8, 2016.

award, accounting for the time that had passed since the 2004 Order.  Finally, the $72,151.17 Husband had previously transferred from the Kaufman and Janus Funds to Wife would be deducted from Wife's final award amount.  **(R. 9).**  Wife timely filed her Rule 59(e) motion on March 7, 2017.  The motion was denied without a hearing or formal order on March 14, 2017.  This appeal followed.

## ISSUE ON APPEAL

Did the family court err in relying exclusively on the payment calculation made by accountant John Godwin pursuant to the 2004 Order when subsequent orders appointed Catherine Stoddard as the accountant to make the calculation?

## STANDARD OF REVIEW

"The family court is a court of equity."  *Lewis v. Lewis*, 392 S.C. 381, 386, 709 S.E.2d 650, 652 (2011).  "Our standard of review, therefore, is *de novo*."  *Id.* Accordingly, "[o]n appeal from the family court, the appellate court has jurisdiction to find facts in accordance with its own view of the preponderance of the evidence." *S.C. Dep't of Soc. Servs. v. Polite*, 391 S.C. 275, 279, 705 S.E.2d 78, 80 (Ct. App. 2011).  However, "this broad scope of review does not alter the fact that a family court is better able to make credibility determinations because it has the opportunity to observe the witnesses."  *Wilburn v. Wilburn*, 403 S.C. 372, 380, 743 S.E.2d 734, 738 (2013).  "Additionally, the de novo standard does not relieve the appellant of the burden of identifying error in the family court's findings."  *Id.*  "Accordingly, we will affirm the decision of the family court in an equity case unless its decision is controlled by some error of law or the appellant satisfies the burden of showing the preponderance of the evidence actually supports contrary factual findings by th[e appellate] court."  *Holmes v. Holmes*, 399 S.C. 499, 504, 732 S.E.2d 213, 216 (Ct. App. 2012).

## LAW/ANALYSIS

Wife argues the family court erred in relying on Godwin's analysis pursuant to the 2004 Order because that order was modified by the 2008 and 2015 Orders appointing Stoddard as the accountant.  Therefore, Wife contends the subsequent orders are also the law of the case and, due to Husband's failure to establish that Stoddard did not follow her court-ordered accounting procedure, this court should remand this matter to the family court to enter a monetary judgment for Wife on the basis of Stoddard's analysis.  Husband counters that the family court had the discretion to judge the evidence presented and rule that Godwin's calculation

pursuant to the 2004 Order was the most applicable calculation because there is no language in either the 2008 or 2015 Orders that prevented the family court from exercising this discretion. Additionally, Husband contends that the parties were indeed bound by Godwin's $42,768.05 calculation, and the only issue for the family court to decide was how to calculate that amount's present-day value. We hold that the family court's order impermissibly modified the previous orders.

**Controlling Order/Calculation**

As an initial matter, Husband argues the issue on appeal is not preserved for appellate review.

"[I]ssue preservation requires that an issue be raised to and ruled upon by the [family court]." *Herron v. Century BMW*, 395 S.C. 461, 465, 719 S.E.2d 640, 642 (2011). "Without an initial ruling by the [family] court, a reviewing court simply is not able to evaluate whether the [family] court committed error." *Doe v. Doe*, 370 S.C. 206, 212, 634 S.E.2d 51, 54 (Ct. App. 2006). "Error preservation rules do not require a party to use the exact name of a legal doctrine in order to preserve an issue for appellate review." *Kosciusko v. Parham*, 428 S.C. 481, 506, 836 S.E.2d 362, 375 (Ct. App. 2019) (quoting *State v. Brannon*, 388 S.C. 498, 502, 697 S.E.2d 593, 595 (2010)). "Instead, a litigant is only required to fairly raise the issue to the [family] court, thereby giving it an opportunity to rule on the issue." *Id.* (alteration in original) (quoting *Brannon*, 388 S.C. at 502, 697 S.E.2d at 595–96). "If a party is unsure whether [s]he properly raised all issues and obtained a ruling, [s]he must file a Rule 59(e) motion or an appellate court may later determine the issue or argument is not preserved for review." *Elam v. S.C. Dep't of Transp.*, 361 S.C. 9, 25, 602 S.E.2d 772, 780 (2004). However, "[a]n issue may not be raised for the first time in a motion to reconsider." *Johnson v. Sonoco Prods. Co.*, 381 S.C. 172, 177, 672 S.E.2d 567, 570 (2009).

Here, Wife objected to the admission of Godwin's report and argued throughout the hearing that Stoddard's calculation should apply and that the 2004 Order was modified by subsequent orders. *See Kosciusko*, 428 S.C. at 506, 836 S.E.2d at 375 ("Error preservation rules do not require a party to use the exact name of a legal doctrine in order to preserve an issue for appellate review." (quoting *Brannon*, 388 S.C. at 502, 697 S.E.2d at 595–96)). Further, Wife filed a timely Rule 59(e) motion, which we believe adequately preserved this issue. Wife is not raising a new theory of the case. She is challenging an issue ruled on by the family court. *See, e.g.*, *Plantation A.D., LLC v. Gerald Builders of Conway, Inc.*, 386 S.C. 198, 207, 687 S.E.2d 714, 719 (Ct. App. 2009) (finding that even though appellant did

not address the argument at the summary judgment hearing, appellant's argument was preserved for appeal because appellant fully addressed the issue in its motion to alter or amend judgment and was not attempting to raise a new theory of law); *id.* ("As the issue . . . was raised to and ruled on by the trial court, we find the issue properly before this court."). Accordingly, we find the issue was adequately preserved for appellate review.

Generally, the family court has the authority to modify any order issued by the family court. S.C. Code Ann. § 63-3-530(A)(25) (2010). However, "[t]he [family] court's order as it affects distribution of marital property shall be a final order not subject to modification except by appeal or remand following proper appeal." S.C. Code Ann. § 20-3-620(C) (2014); *Simpson v. Simpson*, 404 S.C. 563, 571, 746 S.E.2d 54, 59 (Ct. App. 2013); *Hayes v. Hayes*, 312 S.C. 141, 144, 439 S.E.2d 305, 307 (Ct. App. 1993) ("There is no statutory authority for modifying an order of equitable distribution . . . ."). "[T]he law in South Carolina is exceedingly clear that the family court does not have the authority to modify court ordered property divisions." *Green v. Green*, 327 S.C. 577, 581, 491 S.E.2d 260, 262 (Ct. App. 1997). "While an agreement concerning alimony or child support may be modified and enforced by the family court unless the agreement clearly provides otherwise, *an agreement regarding equitable apportionment claims is final and may not be modified by the parties or the court*." *Simpson*, 404 S.C. at 571–72, 746 S.E.2d at 59 (quoting *Swentor v. Swentor*, 336 S.C. 472, 480 n.2, 520 S.E.2d 330, 334 n.2 (Ct. App. 1999)). However, such agreements "may be *enforced* by the family court unless the agreement provides otherwise." *Id.* at 572, 746 S.E.2d at 59 (emphasis added) (quoting *Swentor*, 336 S.C. at 480 n.2, 520 S.E.2d at 334 n.2).

Here, the 1996 Order provided that the parties shall "split 50/50 as their equitable share the values of those funds remaining as of August 1, 1996." As an order affecting the distribution of marital property, pursuant to the parties' agreement, the provision of the 1996 Order regarding the parties' marital property was not subject to modification. *See Green*, 327 S.C. at 581, 491 S.E.2d at 262; *Hayes*, 312 S.C. at 144, 439 S.E.2d at 307. However, the 1996 Order was silent as to *how* the parties were to split the accounts. When the parties themselves failed to complete the court ordered divisions, the family court appointed Godwin to value the accounts to enforce the 1996 Order and allow for the equitable distribution of the property. That is, the court allowed for a 50-50 split between the parties. *See Brown v. Brown*, 392 S.C. 615, 624, 709 S.E.2d 679, 684 (Ct. App. 2011) ("When the terms of an agreement omit a necessary provision such as the time for performance, a court will imply a reasonable term.").

The 2004 Order did not change the equitable apportionment of the accounts or otherwise modify the 1996 Order. The court merely provided further clarification to enforce the court ordered division of the accounts. *See id.* at 623, 709 S.E.2d at 684 ("[T]he family court is authorized to construe and enforce contracts relating to property involved in a divorce action."). Therefore, the 2004 Order appointing Godwin did not impermissibly modify the substance of the 1996 Order. *See id.* at 623, 709 S.E.2d at 684 ("Because [the family court]'s ruling modified the substance of the judgment reflected in the divorce decree, the family court erred in finding Rule 60(a) authorized its modifications."). Rather, it merely enforced the parties' agreement to divide the net asset value of the accounts by facilitating the valuation of the accounts because the parties themselves were unable to complete the task. *See id.* at 624, 709 S.E.2d at 684 ("[The subsequent] order establishing a pricing scheme for the marital home merely enforced the terms of both the divorce decree and the parties' prior agreement reflected in the [prior] order . . . .").

Likewise, the 2008 and 2015 Orders further provided clear mechanisms to calculate the monetary value of the accounts and facilitate the division of the marital property. Like the 2004 Order, the 2008 Order enforced the parties' initial agreement to divide the accounts 50-50. Because the parties had not divided the accounts as of 2008, and Godwin's calculation *did not* account for the passive increase or decrease in value as of 2008, Judge Conits acted within the realm of the family court's equitable power to provide further instructions for the parties to divide the accounts. *See id.* ("[The subsequent] order establishing a pricing scheme for the marital home merely enforced the terms of both the divorce decree and the parties' prior agreement reflected in the [prior] order . . . ."). The 2008 and 2015 Orders did not change the equitable apportionment of the accounts, nor did they change the scope and substance of the parties' agreement pursuant to the 1996 and 2004 Orders. *See Simpson*, 404 S.C. at 571–72, 746 S.E.2d at 59 ("*[A]n agreement regarding equitable apportionment claims is final and may not be modified by the parties or the court*, although it may be enforced by the family court unless the agreement provides otherwise." (quoting *Swentor*, 336 S.C. at 480 n.2, 520 S.E.2d at 334 n.2)); *Brown*, 392 S.C. at 623, 709 S.E.2d at 684 ("Because [the family court]'s ruling modified the substance of the judgment reflected in the divorce decree, the family court erred in finding Rule 60(a) authorized its modifications").

Therefore, all subsequent orders, pursuant to the parties' agreements, are binding on the parties and the court. *Clark v. Clark*, 423 S.C. 596, 610, 815 S.E.2d 772, 779 (Ct. App. 2018) ("[T]erms of a final property settlement agreement, once approved, are binding on the parties and the court." (quoting *Price v. Price*, 325 S.C 379, 382, 480 S.E.2d 92, 93 (Ct. App. 1996))). Husband concedes that he agreed to

the terms of the 2008 agreement, and the uncontroverted evidence shows he signed the engagement letter with Stoddard pursuant to the unappealed 2015 Order. Until the marital accounts have been divided, the family court has the jurisdictional power to instruct the parties further and supervise the division of the marital accounts pursuant to the parties' agreement as ordered by the court. *See Brown*, 392 S.C. at 625, 709 S.E.2d at 685 (finding the family court had the discretion to issue a subsequent order giving the parties instructions on how they were to sell their marital home and remanding the matter for continued supervision by the family court for the sale of the home). By finding the parties were bound by only Godwin's calculations and disregarding Stoddard's analysis, the family court impermissibly modified the 2008 and 2015 Orders. Accordingly, we reverse the family court's judgment.

However, we disagree with Wife that the family court was bound by Stoddard's analysis. "The family court has broad discretion in valuing the marital property. A family court may accept the valuation of one party over another, and the court's valuation of marital property will be affirmed if it is within the range of evidence presented." *Lewis*, 392 at 393, 709 S.E. 2d at 656 (quoting *Pirri v. Pirri*, 369 S.C. 258, 264, 631 S.E.2d 279, 283 (Ct. App. 2006)). "[A]s for a family court's finding of a marital asset's value, '[d]etermination of fair market value is a question of fact.'" *Id.* at 391, 709 S.E. 2d at 655 (second alteration in original) (quoting *Payne v. Holiday Towers, Inc.*, 283 S.C. 210, 215, 321 S.E.2d 179, 182 (Ct. App. 1984)). "A family court's valuation determination will be affirmed on appeal if the valuation is within the range of values presented by the parties." *Avery v. Avery*, 370 S.C. 304, 313–14, 634 S.E.2d 668, 673 (Ct. App. 2006). Therefore, we remand for a hearing to calculate the present-day valuation of the accounts and to order their equitable distribution. *See Teeter v. Teeter*, 408 S.C. 485, 498, 759 S.E.2d 144, 151 (Ct. App. 2014) ("It is fairer to value a passive asset at or near the time of the final hearing[] because both parties are equally deserving to share in any increase or decrease . . . ." (quoting *Burch v. Burch*, 395 S.C. 318, 326, 717 S.E.2d 757, 761 (2011))). In valuing the marital property, the family court must consider Stoddard's analysis pursuant to the 2008 and 2015 Orders.

## CONCLUSION

Based on the foregoing, we reverse the family court's order and remand for a hearing to calculate the present-day valuation of the accounts and to order their equitable distribution consistent with the 50-50 ratio previously established.

**REVERSED and REMANDED.**

**LOCKEMY, C.J., and GEATHERS and HEWITT, JJ., concur.**