KONDUROS, J.:
In this divorce action, Amika T. Clark (Wife) appeals the family court's awarding joint custody to her and Tyrus J.
Clark (Husband) of their daughter (Child). She contends the court erred in finding exceptional circumstances supported such an award. She also maintains the family court erred in granting Husband's motion to reconsider the parties' settlement agreement in regards to the equitable division of property. We affirm.
FACTS/PROCEDURAL HISTORY
Husband and Wife married in 2006 and Child was born in December of 2009. Husband has another daughter, who was born in 2002, as a result of a previous relationship, who lives with her mother in Arizona.
In 2012, Husband initiated divorce proceedings against Wife but the matter was later administratively dismissed. He filed another action against Wife on October 28, 2013, but did not serve Wife. The parties continued to reside together. On March 16, 2014, the parties had a physical altercation at their home. Both parties called the police and alleged physical abuse by the other party.[1] Wife was arrested for criminal domestic violence.
On March 24, 2014, Wife filed an action against Husband seeking a divorce and sole custody of Child, alleging physical and verbal abuse. She also sought an order of protection against Husband. The family court held a hearing and denied Wife's request for the order of protection, consolidated Husband's and Wife's actions, and issued a joint restraining order. Husband amended his pleadings to allege Wife physically abused him and sought a restraining order. He also requested primary custody of Child and served Wife with the pleadings. Shortly thereafter, the family court held an expedited temporary hearing and as result, issued a temporary order providing the parties would have joint custody of Child and share parenting time on a week-to-week basis.
A final hearing was held May 19 through 21, 2015.[2] At the beginning of the hearing, the family court sent the parties out of the courtroom to give them more time to reach an agreement in the case. When the parties *775 returned to the courtroom about an hour later, they advised the court they had reached a partial settlement agreement resolving the equitable division of property. The parties agreed they would each keep the personal property they had in their possession. Husband would reimburse Wife $3,000 for the difference in the value of property they had in their possession. The parties provided they agreed to a 50/50 split and gave the family court a list of assets and debts. Some of the balances of accounts were missing but were to be filled in by the parties with the balances at the time of filing. Also, alimony was waived. Both parties were questioned as to whether they wanted the family court to approve their settlement agreement and if they knew the agreement would not be reviewable and would be final in nature. Both parties agreed. The family court approved the agreement, and the hearing proceeded on the remaining contested matters.
At the hearing, both parties as well as two of Child's teachers testified Child was doing well and was happy. Wife visited Child each day at preschool for thirty minutes during the weeks Husband had custody of Child. Husband did the same but less often than Wife. Husband called Linda Hutton to testify, who the parties stipulated was an expert in the field of psychotherapy for adolescents and children. Hutton testified Child was doing well with the week-to-week custody arrangement and at the current time did not need therapy. Hutton indicated she did not know how a change in custody might affect Child.
The guardian ad litem (GAL) testified she did not have any concerns with Child's health and well-being with either party. However, the GAL noted the parties have a difficult time making joint decisions. She also indicated Child first began seeing Hutton because the GAL believed Child was "drawing back a little bit." Yet, according to the GAL, Hutton found Child was in the normal range and did not observe the behavior the GAL had noticed. Still, the GAL continued to notice the drawing back but acknowledged Hutton was an expert in the field, whereas she was not. The GAL believed Child would, like anyone, experience some stress from changing the custody situation but that she was resilient. She stated Child had "done remarkably well so far." The GAL determined Child enjoyed and appreciated the time she spent with Husband. The GAL provided some of her concerns could be alleviated by parents' decision-making responsibilities being divided with one parent making the final decision in certain areas and the other parent making the final decision in other areas, instead of them trying to make decisions together. The GAL described Child as being a joy to work with and very polite, articulate, kind, smart, empathetic, and perceptive. The GAL stated her "biggest concern here is that ability to get to a final conclusion that they could move forward on" because "it's very difficult for these parties to move forward."
Husband testified he currently works out of his home for a computer science business. He provided he travels some for work but only when Child was not in his custody. He indicated his negotiations for employment with his current employer included his getting to pick and choose when he travels in order to accommodate the custody schedule. He stated his previous job with IBM involved a lot of mandatory travel. Husband also testified that when Child was in his custody he encouraged Child to call Wife and tell her she loves her frequently. Husband believed a change in the custody schedule would hurt Child because it would break the routine to which she has become accustomed and cause her anxiety. He thought it took Child a long time to overcome Wife's arrest and she had "finally stabilized and ... taken off."
Wife testified she typically works Monday through Friday from 8:00 a.m. to 5:00 p.m. On Fridays when Child is scheduled to go to Husband's for the week, Wife works from 11:00 a.m. to 7:00 p.m. to spend more time with Child that morning. She provided her employer is flexible with her schedule. She indicated she travels sometimes for her job and Child stays with her parents at those times. Wife asserted that during the marriage, she had been Child's primary caregiver because Husband was often out of town for work or busy working even when he was home. Wife was not in favor of the current week-to-week custody schedule because she *776 believed Child was accustomed to her being the primary caregiver. Wife thought Child needed a "home base" to do her homework assignments timely, which Wife did not believe Husband would ensure. Wife indicated she believed Husband was a good father.
The family court issued a final order and divorce decree awarding the parties joint custody of Child, alternating placement from week to week,[3] with Wife being the final decision maker. The court noted it had concerns about the parties' inability to communicate with one another. Based on the totality of the record, the court determined exceptional circumstances existed warranting joint physical custody to continue and that it was in Child's best interest. The court found because Child had thrived for the fourteen months prior to the final hearing under the current placement schedule, it was best to continue it. The family court was concerned about the effect of adding a change in custody when Child was soon to begin a new school program.
The family court later filed a supplemental order, which included the distribution of assets. Wife filed a motion for reconsideration, arguing the family court should have awarded her sole custody and Husband visitation only. The family court denied her motion. Husband filed a motion to reconsider and alter or amend judgment pursuant to Rules 52, 59(e), and 60, SCRCP, arguing a twelve-foot trailer included in the marital estate was accounted for twice in the supplemental order. The family court amended the supplemental order to include the trailer only once. This appeal followed.
STANDARD OF REVIEW
The appellate court reviews decisions of the family court de novo. Lewis v. Lewis , 392 S.C. 381, 386, 709 S.E.2d 650, 652 (2011). The appellate court generally defers to the findings of the family court regarding credibility because the family court is in a better position to observe the witness and his or her demeanor. Id. at 385, 391, 709 S.E.2d at 651-52, 655. The party contesting the family court's decision bears the burden of demonstrating the family court's factual findings are not supported by the preponderance of the evidence. Id. at 388-89, 709 S.E.2d at 653-54.
Our supreme court recently reiterated its holding from Lewis , stating:
In Lewis , this [c]ourt extensively analyzed the applicable standard of review in family court matters and reaffirmed that it is de novo. We noted that, while the term "abuse of discretion" has often been used in this context, it is a "misnomer" in light of the fact that de novo review is prescribed by article V, § 5 of the South Carolina Constitution.
We observed that de novo review allows an appellate court to make its own findings of fact; however, this standard does not abrogate two long-standing principles still recognized by our courts during the de novo review process: (1) a trial judge is in a superior position to assess witness credibility[ ] and (2) an appellant has the burden of showing the appellate court that the preponderance of the evidence is against the finding of the trial judge.
Stoney v. Stoney , Op. No. 27758 (S.C. Sup. Ct. refiled April 18, 2018) (Shearouse Adv. Sh. No. 16 at 9, 10-11) (per curiam) (footnote and citation omitted).
LAW/ANALYSIS
I. Custody
Wife contends the family court erred in finding exceptional circumstances warranted Husband and Wife having joint custody of Child. We disagree.
"The paramount and controlling factor in every custody dispute is the best interests of the children." Brown v. Brown , 362 S.C. 85, 90, 606 S.E.2d 785, 788 (Ct. App. 2004) ; see also Davis v. Davis , 356 S.C. 132, 135, 588 S.E.2d 102, 103-04 (2003) (finding in a child custody case, the welfare of the child and the child's best interests are the primary, paramount, and controlling considerations of the court). "[T]he appellate court should be reluctant to substitute its own evaluation of the evidence on child custody for that of the [family] court."
*777 Woodall v. Woodall , 322 S.C. 7, 10, 471 S.E.2d 154, 157 (1996). "This is especially true in cases involving the welfare and best interests of children." Dixon v. Dixon , 336 S.C. 260, 263, 519 S.E.2d 357, 359 (Ct. App. 1999) (quoting Aiken Cty. Dep't of Soc. Servs. v. Wilcox , 304 S.C. 90, 93, 403 S.E.2d 142, 144 (Ct. App. 1991)
). "[A] determination of the best interest[s] of the children is an inherently case-specific and fact-specific inquiry." Rice v. Rice , 335 S.C. 449, 458, 517 S.E.2d 220, 225 (Ct. App. 1999).
(A) The court shall make the final custody determination in the best interest of the child based upon the evidence presented.
(B) The court may award joint custody to both parents or sole custody to either parent.
(C) If custody is contested or if either parent seeks an award of joint custody, the court shall consider all custody options, including, but not limited to, joint custody, and, in its final order, the court shall state its determination as to custody and shall state its reasoning for that decision.
(D) Notwithstanding the custody determination, the court may allocate parenting time in the best interest of the child.
S.C. Code Ann. § 63-15-230 (Supp. 2017).
The family court considers several factors in determining the best interest of the child, including: who has been the primary caretaker; the conduct, attributes, and fitness of the parents; the opinions of third parties (including [the guardian ad litem], expert witnesses, and the children); and the age, health, and sex of the children.
Patel v. Patel (Patel I ), 347 S.C. 281, 285, 555 S.E.2d 386, 388 (2001), superseded by statute on other grounds by S.C. Code Ann. §§ 20-7-1545 to -1557. "The family court must consider the character, fitness, attitude, and inclinations on the part of each parent as they impact the child. In addition, psychological, physical, environmental, spiritual, educational, medical, family, emotional[,] and recreational aspects of the child's life should be considered." Woodall , 322 S.C. at 11, 471 S.E.2d at 157 (citation omitted). "While numerous prior decisions set forth criteria that are helpful in such a determination, there exist no hard and fast rules and the totality of circumstances peculiar to each case constitutes the only scale upon which the ultimate decision can be weighed." Davenport v. Davenport , 265 S.C. 524, 527, 220 S.E.2d 228, 230 (1975). "Thus, when determining to whom custody shall be awarded, all the conflicting rules and presumptions should be weighed together with all of the circumstances of the particular case, and all relevant factors must be taken into consideration." Woodall , 322 S.C. at 11, 471 S.E.2d at 157. Although a parent's morality "is a proper factor for consideration," it is only relevant if it directly or indirectly affects the welfare of the child. Davenport , 265 S.C. at 527, 220 S.E.2d at 230. "Custody of a child is not granted a party as a reward or withheld as a punishment." Id.
In South Carolina, in custody matters, the father and mother are in parity as to entitlement to the custody of a child. When analyzing the right to custody as between a father and mother, equanimity is mandated. We place our approbation upon the rule that in South Carolina, there is no preference given to the father or mother in regard to the custody of the child. The parents stand in perfect equipoise as the custody analysis begins.
Brown , 362 S.C. at 91, 606 S.E.2d at 788 (quoting Kisling v. Allison , 343 S.C. 674, 678, 541 S.E.2d 273, 275 (Ct. App. 2001) ).
The family court has jurisdiction to order joint custody when it finds it is in the child's best interests. S.C. Code Ann. § 63-3-530(A)(42) (2010). However, "[a]lthough the legislature gives family court judges the authority to order joint or divided custody whe[n] the court finds it is in the best interests of the child, ... joint or divided custody should only be awarded whe[n] there are exceptional circumstances." Lewis v. Lewis , 400 S.C. 354, 365, 734 S.E.2d 322, 327 (Ct. App. 2012) (omission by court) (quoting Patel v. Patel (Patel II ), 359 S.C. 515, 528, 599 S.E.2d 114, 121 (2004) ). "Absent exceptional circumstances, the law regards joint custody as typically harmful to the children and not in their best interests." Spreeuw v. Barker , 385 S.C. 45, 61, 682 S.E.2d 843, 851 (Ct. App. 2009) ; see Patel II , 359 S.C. at 528, 599 S.E.2d at 121 ) (noting joint custody should be ordered only under *778 exceptional circumstances); Courie v. Courie , 288 S.C. 163, 168, 341 S.E.2d 646, 649 (Ct. App. 1986) ("Divided custody is avoided if at all possible[ ] and will be approved only under exceptional circumstances.").
In determining joint custody is usually considered harmful to and not conducive to the best interest and welfare of a child, our courts have explained the disfavor as follows:
The courts generally endeavor to avoid dividing the custody of a child between contending parties, and are particularly reluctant to award the custody of a child in brief alternating periods between estranged and quarrelsome persons. Under the facts and circumstances of particular cases, it has been held improper to apportion the custody of a child between its parents, or between one of its parents and a third party, for ordinarily it is not conducive to the best interests and welfare of a child for it to be shifted and shuttled back and forth in alternate brief periods between contending parties, particularly during the school term. Furthermore, such an arrangement is likely to cause confusion, interfere with the proper training and discipline of the child, make the child the basis of many quarrels between its custodians, render its life unhappy and discontented, and prevent it from living a normal life.
Lewis , 400 S.C at 365, 734 S.E.2d at 327-28 (quoting Scott v. Scott , 354 S.C. 118, 125-26, 579 S.E.2d 620, 624 (2003) ).
In Spreeuw , this court found:
[T]he exceptional nature of this case demands that we affirm the family court's award of joint physical custody. In this case, a seven[-]year delay occurred between the issuance of the family court's final order ... and oral argument before this panel.... The reasons for the delay in this case range from the acceptable-Father's bankruptcy proceeding-to the unacceptable-the rash of motions filed by both parties. Since the family court's final order, the children have grown from the ages of five and twelve to the ages of twelve and nineteen. Undoubtedly, many things have changed in the children's lives since 2002. However, the custodial arrangement has remained constant. At this point, we are reluctant to order a change in the custody arrangement based on a record which most certainly has become cold. Accordingly, we affirm the family court's decision to award both parties joint physical custody of the children.
385 S.C. at 61-62, 682 S.E.2d at 851.
Likewise, we affirm the family court's custody award in the present case. Wife argues the record contains no evidence she engaged in conduct to alienate Child from Husband.
However, Husband testified that during the marriage, due to Wife's influence, Child could not tell him she loved him and told him she could only give him one hug. He provided he "stopped [the] marriage because [he] wanted [Child] to be able to freely love who she wanted to love." Husband testified Child was acclimated to the current custody arrangement and knew when it was time for the exchange between Wife and Husband. He believed Child needed both her parents in order to become a well-adjusted child and adult and neither parent had a greater position in her life than the other. Wife testified she wanted Husband and Child to have a strong bond. She also provided Husband loves Child and is a good father.
While joint custody is generally disfavored, this arrangement worked well for Child for the fourteen months before the final hearing.[4] This custody arrangement has now continued from the time of the hearing (May 2015) until present, which is an additional twenty-nine months, amounting to a total of forty-three months or about three and a half years-close to half of Child's life. The teachers, parents, GAL, and therapist all testified about how well Child was doing. Many witnesses commented on how happy and well-adjusted she was at the time of the final hearing. We find the passage of time and the good reports on Child's welfare and mental adjustment to the situation comprise exceptional *779 circumstances warranting joint custody. While disfavored, no evidence has been presented to allow the family court or this court to rule differently. Accordingly, we affirm the family court's joint custody award.
II. Settlement Agreement
Wife maintains the family court erred when it issued an order granting Husband's motion to reconsider the parties' settlement agreement equitably allocating the marital estate. We disagree.
"[P]arties may enter into contracts resolving issues of alimony and equitable distribution and ... the family court has jurisdiction over those contracts." Swentor v. Swentor , 336 S.C. 472, 479, 520 S.E.2d 330, 334 (Ct. App. 1999).
"The family court has exclusive jurisdiction: ... (25) to modify or vacate any order issued by the court." S.C. Code Ann. § 63-3-530(A) (2010). "However, 'the law in South Carolina is exceedingly clear that the family court does not have the authority to modify court ordered property divisions.' " Simpson v. Simpson , 404 S.C. 563, 571, 746 S.E.2d 54, 58-59 (Ct. App. 2013) (quoting Green v. Green , 327 S.C. 577, 581, 491 S.E.2d 260, 262 (Ct. App. 1997) ); see S.C. Code Ann. § 20-3-620(C) (2014) ("The court's order as it affects distribution of marital property shall be a final order not subject to modification except by appeal or remand following proper appeal."); Swentor , 336 S.C. at 480 n.2, 520 S.E.2d at 334 n.2 ("[A]n agreement regarding equitable apportionment claims is final and may not be modified by the parties or the court ....").
In Green , during a divorce proceeding, the parties reached a property settlement agreement, which was approved by the family court. 327 S.C. at 578, 491 S.E.2d at 261. Later, the wife moved to adjust the agreement to decrease the value of an office building allocated to her in the settlement, contending "the husband and his expert 'fraudulently concealed and withheld evidence of the true condition of the building and the fact that there was structural as well as other damage to the building which would have a cost of approximately $36,500 to repair.' " Id. at 578-79, 491 S.E.2d at 261. "The wife conceded that neither she nor the husband really knew the extent of the damage to the building at the time they entered into the agreement." Id. at 579, 491 S.E.2d at 261. The family court concluded "it was within the 'equitable powers' of the court to reopen and modify the parties' agreement." Id. at 581, 491 S.E.2d at 262. However, this court found "the law in South Carolina is exceedingly clear that the family court does not have the authority to modify court ordered property divisions." Id.
Rule 60(a), SCRCP, permits trial courts to correct clerical errors at any time: "Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders." Nevertheless,
The family court's correction of clerical errors may not extend to "chang[ing] the scope of the judgment." Michel v. Michel , 289 S.C. 187, 190, 345 S.E.2d 730, 732 (Ct. App. 1986). "Except for those matters over which a court retains continuing jurisdiction, terms of a final property settlement agreement, once approved, are binding on the parties and the court." Price v. Price , 325 S.C. 379, 382, 480 S.E.2d 92, 93 (Ct. App. 1996) ; accord Doran v. Doran , 288 S.C. 477, 478, 343 S.E.2d 618, 619 (1986) ("A trial judge loses jurisdiction to modify an order after the term at which it is issued, except for the correction of clerical [errors]. Once the term ends, the order is no longer subject to any amendment or modification which involves the exercise of judgment or discretion on the merits of the action.").
Brown v. Brown , 392 S.C. 615, 622, 709 S.E.2d 679, 683 (Ct. App. 2011) (alterations by court).
The situation here is unlike that in Green . Wife does not allege she and Husband owned more than one trailer. The order included the trailer in two different places, thus accounting for it twice. Changing the order to only include the trailer once was not a change in the scope of judgment but was merely a correction of a clerical error. Accordingly, the family court was allowed to correct this. The fact that the parties reached *780 the settlement on the division of marital property after being sent out in the hall for an hour to negotiate at the beginning of the final hearing likely contributed to the parties submitting forms that had been hastily prepared or had not been double checked. Therefore, the family court did not err in correcting the order to only account for the twelve-foot trailer one time instead of two.
CONCLUSION
The family court did not err in awarding joint custody as this case presented exceptional circumstances. Further, the family court did not err in granting Husband's motion to modify the marital division due to the erroneous inclusion of the trailer twice. Accordingly, the family court's decision is
AFFIRMED.
SHORT and GEATHERS, JJ., concur.

Police were called to the parties' home eleven times between 2012 and 2014.

At the time of the final hearing, the domestic violence charge against Wife was still pending. Wife testified she chose not to participate in a pretrial intervention program because she believed it would require her to admit to guilt. As a result, a no contact order, which prevented the parties from communicating, remained in effect at the time of the final hearing.

During summer, the rotation would be month-to-month.

Child was about four and a half years old when her parents starting living apart and began sharing custody, was about five and a half years old at the time of the final hearing, and is now over eight years old.